Um, Mhm, mm. n. Please, Court Lewis and Phillips. Kelly Hart on behalf of Appellant Jay Simonde or See Mon with my associate Amelia Hurt. It's a privilege to be allowed to address the court, one that has not dimmed in over 44 years of practice. And I appreciate being here. You're welcome. Glad you made it. Well, I am too. This appeal proceeds against the backdrop of this court's standard that exception to discharge must be construed against the creditor and liberally in favor of debtor so that a debtor may be afforded a fresh start. We have a situation where we have an LLC. One third owner ultimately files bankruptcy. LLC ultimately sells the LLC property and distributes proceeds to one of the members who paid an excessive share of contributions toward a note so that the property of the LLC would not be foreclosed on. This case involves, as all fraud cases do, the badges of fraud, and the court is well aware of the badges of fraud, lack or inadequacy of consideration, the family friendship or close associate relationship between the parties, retention of possession, benefit or use of the property in question. Financial condition of the party sought to be charged both before and after the transaction in question, the existence of cumulative effect of the pattern or series of transactions, the course of conduct after the incurring of debts, onset of financial difficulties, or pendency of suits by creditors, and the general chronology of the events and transactions under inquiry. That's the badges, the ones applicable here according to the lower courts who misstated them, misplaced them, misanalyzed them, and supplied them as a standard, meaning that we think we get de novo review of at least that component of the lower court's approach. Are the retention of possession, benefit or use of the property in question, and the financial condition of the property sought to be charged both before and after the transaction in question. Finally, the court put stock in the familial relationship of the parties. The lower courts misused and misapplied badges three and four such that their rulings were legal error because of misapplying a legal standard, misapplied the second badge, the familial. Can I just step back and make sure I understand your argument? Do you dispute that Mr. Simone's interest in D squared was a state property? I do not at all. Okay. And then you don't dispute then that he transferred that interest to his brother after he filed his petition? I do dispute that, Your Honor. You dispute that he transferred the interest? Yes, sir. Where is that in the record? That's our briefing about the effect of property of the estate. His membership interest went into his Chapter 7 estate. Chapter 7 estate is represented and governed, and the property is the trustee. The trustee had the scheduled . . . Is this the argument that you failed to make in the bankruptcy court? I was not . . . Well, Mr. Simone's lawyer . . . Was it raised in the bankruptcy court? We think it was sufficiently raised in bankruptcy court because of the operative facts. You have an LLC interest. You have a scheduled LLC interest. You have a scheduled LLC interest that defines and describes the property owned by the LLC, the amount of debt in the LLC, and you have a trial which was comprised in great part on the discharge part. There was also a dischargeability part that was not determined by the bankruptcy court. But the discharge part dealt with the brother having made excess contributions for five years. The LLC did the transaction. The argument was that the property and proceeds were proceeds of the LLC, which they were because the LLC owned the property, and that the proceeds by the LLC were paid to the brother who was the third member of the LLC and who took up paying for five years. So what we have said in our briefing is that the exceptions that have been recognized by this court that allow this court to do an analysis of the legal issue that would be dispositive of the facts that are of record allow this court to decide whether or not the exact posing of the question in the exact language we've done it was made in the bankruptcy court. All of the operative facts were in the bankruptcy court. We're not arguing anything that wasn't put into evidence. We're only arguing that by operation of the bankruptcy code and by operation of state law that either fits with or is preempted by the bankruptcy code, the effect is that the bankruptcy judge and the district court judge below misapplied the badges of fraud as a legal matter because they misapplied them, thereby misapplying a legal standard to the facts at issue. That's our point. We might have handled it different. Probably would have handled it different. But the evidence is all there that supports the legal theory that we're espousing here to preclude an exception of discharge, a denial of discharge. And I think going through briefly on the story would help, but I don't want to spend a lot of my time. The basic facts of the story are, 2016, one of the members, the one who ultimately filed bankruptcy in 2019, can't pay the capital contributions necessary to make the note payment on undeveloped Mississippi hunting property. LLC, three guys, no operating agreement, somebody said put it in the LLC. I guess if someone gets hurt in hunting, maybe the insurance policy protects them as members. And one of them says, I can't pay. Other brother pays for other reasons because he's not paying there. It's certainly not because of his membership in the LLC and not being able to pay his capital contributions. Mr. Seaman files a Chapter 7 bankruptcy case, not a reorganization, a 7. Trustee becomes employed. Trustee takes over the estate. Trustee has sole authority to act for the estate, sole authority to act for the membership. One of two ways, either Mississippi law preempts and neither the trustee nor Seaman have any managerial rights or membership rights to operate within the LLC, or bankruptcy, Mississippi law applies, or bankruptcy law preempts such that the trustee has membership rights and any management and the economic interest, but consistent within either of those approaches to the effect of bankruptcy on Mississippi state law that says upon the filing, you lose your membership rights. Mississippi law says you maintain your economic rights, but you can't participate. Well, okay, Simon can't participate and doesn't get the economic interest in the LLC. Simon can't do anything with respect to the LLC operations, the property of the LLC, the disposition of the LLC. We cited Mississippi law that says that property is substantially all the property or all the property of an LLC can be sold by majority vote. Two members voted to sell the property. He signed on for whatever reason of no legal effect, and the other two members said we want the proceeds to go, this one-third share to go to the party who had paid the one-third share's interest or no payments, because if he hadn't paid it, the property would have been foreclosed on. So what the bankruptcy court did was the bankruptcy court said, I'm going to use advantage of fraud, and let's look at the possession of the property. Back in 2016, when he couldn't make his payments on the note, he kept hunting on the property. Whether he did or not, I think there was a stipulation that he was allowed to keep hunting on the property, although the property lost its value because it continued to flood. The court says he possessed the property and retained at least the indicia of ability to use the property. Well, the property at issue is not the membership interest. He kept his membership interest. He just couldn't make his capital contributions. The Mississippi state law says that the result of that is that you don't get an alienation of your interest. That's not one of the consequences of not being able to pay your capital contribution. You get adjusted out if there's any money. And that's exactly, we think, what the record shows the deal was between the parties. Appellee says, no, no, it's maybe a gift. Well, I never heard of a gift whereby I agree to give it if I have to. Well, what he said was, I'm not suing the brother. I'll take it from the LLC. The brother said, take it from the LLC. That was in 2016, five years before the property sold. The property sold two years after the final bankruptcy case. Two years after the trustee took over as a sole representative of the bankruptcy state and had sole control and authority over the membership interest. So whatever Simon wanted to do, he had no legal authority to do it. He could, and had he tried, they could have told him, don't come around anymore. You're not the member. Don't come around anymore. You have no stake. Why? Trustee had the membership. All right. So number one, the possession badge of fraud was wrong. The bankruptcy court focused on possession of the real property owned by the LLC while he was a member. How can it be a presumption of fraud, a badge of fraud, if I'm a member of an LLC that owns real estate that's hunting property and I go hunt on the real estate that's owned by the LLC of which I'm a one-third member? That can't be. Number two, there's no assertion that Simon ever possessed or retained or had access to any of the proceeds. Those were estate of not estate. They were LLC proceeds. The estate might have had a claim to a distribution, but Simon had no interest in the proceeds and never held the proceeds. So the first badge of fraud used, possession of the property, is totally wrong and totally misapplication of the badge. The second badge is, and it's a confusing badge, the financial guy before and the financial guy condition of the actor after the transaction. What transaction? Well, the bankruptcy court says, yeah, but in 2016 he couldn't have the financial condition to pay the contributions to pay the notes. Well, no, he didn't. That's why the brother paid him. So he had no financial condition to be able to act as a contributing member, but he doesn't lose in membership. He just loses his right to a one-third share of any disbursements. Now, another couple of things. The bankruptcy court does some kind of sleight of hand. The bankruptcy court in footnotes 16 says he wasn't entitled to any distributions, but he was entitled to profits. So he had an entitlement to profits. Only problem with that is the record shows that the property was sold for about 20% less than it was bought for. So how can you have profits if you sell property for 20% less than it was bought for? They had proceeds over and above the mortgage because the mortgage got paid down, but the brother paid one-third extra for five years. So you've got three people, no lawyers. They think, well, it makes sense that the brother gets the bigger share and the one-third, I don't get it because I couldn't pay it for five years. The trustee, by the way, didn't pay for two years post-bankruptcy. The brother did. And now the financial condition. In 2016, he had a bad financial condition. Okay. But that's why he couldn't pay the money. What about in 21, before the transaction whereby the brother got from the LLC the proceeds? What was his financial condition? He was bankrupt. He'd been bankrupt for two years. And after, he was bankrupt. He'd been sued for dischargeability, for violation. He was bankrupt. So we say that using these two presumptions was wrong. They don't apply. We don't think that the financial condition even applies to a transaction post-bankruptcy where the debtor didn't transfer anything because the debtor couldn't have transferred anything. The debtor's bankrupt before and bankrupt after. Other thing that the bankruptcy court does kind of as a shadow, it says maybe he should have amended his schedules. And the appellee said he didn't amend his schedules. Well, the bankruptcy court cites rule 1007 for the requirement of amendment. It doesn't apply. It says under 541A5, you have to amend if you get property within 180 days by bequest device or inheritance, by property settlement or by a beneficiary under an insurance policy. So the bankruptcy source of authority for continued amendments in a Chapter 7 case is not authority at all. And we don't understand this, but the court didn't cite the whole rule. Makes it look like the rule is a general rule when it's not a specific. Thank you very much. Reserved 5 minutes. May it please the Court. Andrew Mendez for the appellee, Andrew J. Harrison, Jr. And with me is my partner, Philip Whitman. And I also express my thanks to the Court. This is my first time arguing in the Fifth Circuit after around 25 years here. Appreciate it. I want to talk about Section 727 of the Bankruptcy Code. That section allows a debtor to be denied a discharge under a four-part test. The debtor transfers, removes, or conceals or permits the transfer, removal, or concealment of a state property with an intent to hinder, delay, or defraud creditors after filing bankruptcy or within one year before filing bankruptcy. The courts below found all four of those elements were present. This Court should affirm for three main reasons. One, a presumption of fraudulent intent applies because of the relationship between the parties here. That's undisputed. The recipient of a state property here was the debtor's brother. I'm going to refer to him as Denis because calling them both Mr. Simon would be really confusing. I'm going to refer to the debtor and the appellant Simon and Denis will refer to as brother. And so this Court has held for years that if a transfer is made either gratuitously or to a family member, a presumption of fraudulent intent arises. There is no dispute here that there is that relationship between the parties. What's your response to the argument that he didn't transfer the interest? Judge, I have a few responses to that. First, it was waived. We exhaustively discussed in our brief how the bankruptcy court had said, here's the, you brief your issues or you waive them. And we listed every issue that was briefed by the appellant in the bankruptcy court, nothing about there was no transfer because of authority. But on the merits of that, if the court were to reach the merits of that, there was, this definitely falls under 727 for this reason. Because I will make an analogy, say the debtor has an asset, a watch or a gold Krugerrand or something, the debtor files bankruptcy. Can the debtor then give that asset away? Can the debtor put it up for auction and let someone else go get the proceeds? Can the debtor sell it? You can't do any of those things because it's property of the estate. And if the creditors found out he did that, they would then say, wait, what are you doing? That belongs to the estate. You can't sell it. You can't give it away. You can't let someone else auction it and let your friend come get the money. That's the trustee's job to administer that asset and to sell it for the benefit of creditors. Now, what the appellant is now saying is that if the debtor were to do that in that situation and got, and someone called him out on it and said, well, I'm objecting your discharge because you were trying to give away estate property after filing bankruptcy, the appellant here would say, oh, well, I didn't have authority to do that, so I can't be liable. And so it's like a heads, I win, tails, you lose situation because either the debtor could have given the property away and no one found out, or if the debtor did purport to give it away and there was an objection to his discharge, he would then say, well, I was without authority. Only the trustee could have sold it, so I'm not liable under 727. But 727 expressly applies to transfers, removal, concealment, or permitting the same after filing bankruptcy. And by definition, once the debtor has filed bankruptcy, he can no longer be selling or giving away or allowing his estate property to be auctioned. And so that would essentially be an exception that would swallow the rule. If you were to say that a debtor who purports to make a transfer without authority has not made a transfer and, therefore, cannot be liable under 727, you would basically be reading out the element of the 727 that imposes liability for these actions after filing a petition. And in addition — Let me ask you on the — I don't know if you fully answered my colleague's question. I thought you had. I'll let you finish if you weren't. Let me get to the issue of Mississippi law and LLCs. At least as you put it in your brief, the LLC failed to keep records that would show whether Simon's interest in distributions had decreased and whether the other brothers increased from one-third each. It doesn't mean Mississippi law is a given, whatever it is. Did the bankruptcy court declare the preemption? And maybe that is the answer, but it does seem to me that if the interest in the LLC is defined by Mississippi law, was the bankruptcy court saying that the evidence wasn't shown to me that the LLC was following Mississippi law? Is it an issue of some fact that maybe the brother really wasn't making these payments? I thought it was accepted that the brother was making these payments for five years or however long it lasted. So help me with Mississippi law on what happens if a member of an LLC obligations are basically taken over by somebody else and the shares are — the rights to distributions automatically adjust. How does that not fit in to what we're dealing with? Yes, Your Honor. So the bankruptcy court pointed out that section 115 of the Mississippi LLC law requires the LLC to keep a record of the member's capital accounts, essentially. That was not done here. And now the appellate . . . It's not a factual dispute so much of whether it was actually being paid by the brother. It's just that the statute wasn't complied with in recording that. Yes. I would say that because the LLC did not keep records of capital accounts, now there needs to be extrinsic evidence of what were the capital accounts. And we have gone through — the bankruptcy court did this, the district court did it, and we did it in our brief. We are going through the evidence that is showing, well, what was the effect of those — of the funding by Deney of his brother Simon's share of the loan payments? And the effect that the bankruptcy court went through, they noted several things that are relevant to whether there was, in fact, a diminution of Mr. Simon's capital account as a result of these actions. And we went through the — we've cataloged the evidence that, in fact, the funding by Deney of Simon's share of the loan was a gift. And by providing the funding to Simon as a gift, that allowed him to make his share of capital contributions using gifted money — but it's still money, it's still making capital contributions — and to thereby maintain his share of the capital contributions. Now, in the records, we'd have — there'd be direct evidence of what the capital accounts were. They did not. So we have to look at the indirect evidence. And what that evidence is, is that it was a gift. And this whole 2016 alleged agreement by the brothers, where Mr. Phillips went through it, said that, well, I can't make my payments anymore. Why don't you make the payments for me? And so what's the effect of that? And we went through — we cross-examined Simon at trial and asked him five different ways, well, you had this agreement with your brother about how did that adjust the capital accounts? Let's ask him five different ways. We asked him in his deposition. He said there was no agreement at all — that's a direct quote — quote, no agreement at all, unquote, with his brother about any kind of repayment for the funding of the capital accounts. Okay? And then at trial, we asked him a different way. Simon admitted under Cross that he and his brother had never discussed a scenario of surplus proceeds if the LLC were to sell its land. Okay? So they didn't — they never discussed what would happen to surplus proceeds. We asked him at trial that there was no agreement that his brother would be repaid for the funding by netting money out of the sale of the LLC's land. And we asked it a different way. He admitted under Cross again there was no agreement with his brother to net out the LLC's capital accounts using sale proceeds from the land. And finally, we got Dennis to agree at trial that he had been funding his brother's share of LLC loan payments as a gift. The bankruptcy court clearly found that significant, and it's literally the only testimony that is quoted in the bankruptcy court opinion. It's a testimony from Denis admitting grudgingly — I think the bankruptcy court said reluctantly — he reluctantly admitted that he had been funding his brother's share of the loan payments as a gift. And by using gifted funds to pay the share of the LLC loan payments, he was thereby maintaining his capital account. And there is other evidence that he was maintaining his capital account as well. The fact that he used the land — continued to use the land for hunting — that shows — I would use the word diluted. Mr. Phillips used a different word. I can't remember exactly his phrasing, but it was essentially to the effect that the use of the land shows that this — Mr. Simon was not — had not been diluted out of the membership. He had not been diluted out of the benefits of being a member. There's only two benefits of being a member of this LLC, because it doesn't generate any income. One is to use the land. Two is if the land is sold, you have a claim to a share of the proceeds as a member. So the fact that he was using — enjoying one benefit of membership, which is the use of the land, is relevant evidence that he also enjoyed the other benefit of membership, which is a right to claim a share of the proceeds. He had not been diluted out or zeroed out on his capital account. I'm not a user of hunting leases and hunting land. It seems odd to me that it would be a badge of fraud that somebody without an ownership interest in the land that's being hunted is — would not be allowed to use it. Friends and family, I would think, one reason to have such a lease is to allow other people to come in with you and enjoy — those who enjoy that — the hunting experience. Is it really a badge of fraud that somebody who may have altered his ownership interest is still hunting? I mean, it's not the kind of benefit that I think usually that badge of fraud would have added to it, like it's a unique benefit. It's a widely shared benefit beyond owners, is it not? Hunting on land? I would agree that the use of the land standing alone would not be dispositive. It is relevant in the sense that it tends to make a fact in dispute more or less likely. The fact that he's using the land is indicative. Perhaps he enjoys the other benefit of membership as well. Well, not a major part of the decision, probably, but it is odd. And, Judge, if I could just — Mr. Phillips went through a few of the badges of fraud. He forgot one. He forgot the big one, which is the family relationship. That is a badge of fraud, and it is what triggered this presumption. And the way they attempted to refute the presumption was by kind of taking pot shots at the courts below reasoning. For example, well, they identified the use of the land as a badge of fraud. Well, you cannot rebut a presumption by attacking evidence that we offered. We didn't need to offer additional evidence. We had the presumption. We did offer additional evidence, badges of fraud, in support of that. But they cannot defeat the presumption by challenging what's essentially cumulative evidence that we are adding on top of the presumption. That would not rebut the presumption. If there's a presumption and there's four badges of fraud or three badges of fraud or two or one, the presumption has not been rebutted. If you knock it down from four badges to three to two to one, that does not rebut the presumption. I'm sorry, Judge, did I answer your question? You asked my question. I may have coughed over some of your answers, but you did answer my question. I do want to go back, Judge Kernodle, about the transfer issue. In addition to that hypothetical I gave where you would essentially be gutting the 727 if you said, just because the debtor is taking an action he doesn't have authority to do, that would excuse him from ever violating the statute. In addition to that, the Mississippi LLC law that purports to strip the member of his membership interest upon filing bankruptcy, that's preempted. That is called an ipso facto clause. It's not enforceable under bankruptcy law. Is there a case that's analyzed that particular question? Yes, Judge, we have a string cite in our brief of that issue. There is no Fifth Circuit case. There's a few cases from district courts in the Fifth Circuit. There is no Fifth Circuit case on that specific point, on that preemption point. Going back to that analogy I had of the debtor purporting to take an action that is later challenged of whether he had authority to do it in terms of transferring an estate asset. Here, the debtor signed a unanimous written consent to the LLC to sell its land knowing that that would allow the LLC to sell its land for net proceeds. And then he is coming into court and saying, I had no authority to manage the LLC's affairs. Well, he's signing a consent. That is managing the LLC's affairs. That is telling the LLC, you have my permission to sell this asset to this buyer for this price. So he cannot now come into court and say, I had nothing to do with managing this LLC's affairs. He signed the unanimous written consent that's in the record that did exactly that, that told the LLC what to do. The courts below, this point of the arguments that were about the transfer, I think those were unquestionably waived. There is some authority that a district court has discretion to entertain an argument that was not made in the bankruptcy court. However, the district court is not required to do that. It is discretionary. The district court here did not entertain those arguments that were not made in the bankruptcy court. That is not reversible error. The merits do not support this argument that the debtor had no authority to give away the transfer for all the reasons I've went through. The bankruptcy court explained what happened here on pages 10 and 12 of its opinion, kind of summed it up. Page 10, Simon had an obligation to disclose the proposed sale of the D-squared property once the long-awaited offer was made. On page 12, the omission circumvented the process of liquidation of assets and distribution to creditors that is the linchpin of the bankruptcy system. That's what the bankruptcy court said. And I want to briefly touch on this point of concealment. It is undisputed in the record, the way this sale and distribution of proceeds came to light was that Harrison propounded discovery on Simon, which Simon resisted initially, and it was only because of Harrison's discovery that this transaction came to light, the bankruptcy court found that was significant and said it indicated, quote, an intent to conceal information that further supported the conclusion that there was fraudulent intent present here. That there was an attempt to conceal this information about the sale and about the availability of proceeds being distributed to the members. The point about- I'm going to ask you, was D-squared not, it was scheduled, shown as no value, his interest in it. Had it not been an issue in any way in the proceedings until this sale occurred? Or until the research by Harrison and uncovered whatever he uncovered first? Yes, Your Honor. And that was because it seemed to be a zero value asset and was not much known about it? Exactly, Your Honor. It was scheduled at a value of zero dollars. The way it was scheduled was it had, I think, a value of 375 with a mortgage that was equal or more than that, so it was zero value. So that would not give any creditor or the trustee any kind of incentive, I better stay on top of this asset, it was just pure happenstance that Mr. Harrison happened to be reviewing public records and saw some indication that the property of D-squared was being listed for sale. And that's what prompted the discovery, and that's what led to this sale coming out. My time is almost up. In conclusion, the courts below correctly applied this court's presumption of fraudulent intent, which requires only either a gratuitous transfer or a transfer to a relative. There's no question here there was a transfer of estate property to a relative of the debtor. The evidence not only failed to rebut that presumption, which had shifted, the burden of proof had shifted on to Simon as a result of that presumption. Not only did Simon fail to rebut that presumption, but we introduced substantial evidence at trial that there was fraudulent intent. Did the courts below correctly pigeonhole each piece of evidence relevant to fraudulent intent into the correct badge? Maybe not. There's some question, well, he was using the property in 2016, why is that relevant to 2021? I tried to explain that. It goes to his intent later that he should have known he enjoyed the benefits of membership of the LLC. And there's the same issue where Mr. Phillips raised the debtor's financial condition. As a debtor, any kind of sale or liquidation of assets would only benefit creditors. That's why the debtor's financial condition is a badge of fraud. Because he could not benefit from a sale, and that gave him an incentive to let someone else come scoop the sale proceeds. My time is up. Thank you, Your Honors. Thank you. May it please the court. Testimony used by the bankruptcy court about whether or not there was a gift. Did you essentially regard the money as a gift that you made your brother? Answer, only if it had to be. It was a gift or was it not? That's correct. In other words, if he was going to pay me back, that's up to him. There was a demand that would happen. That's somewhat less than establishing a donation under Louisiana law. And it has nothing to do with whether or not there would be the right on behalf of the LLC to make a determination that he was entitled under applicable law to a bigger share. What's missing here from the argument of the appellee is that while there's no agreement, we understand that. We're not running from there's no operating agreement. That's why default Mississippi law applies to make certain that if there's no agreement, the party who pays more gets recompensed for paying more. And who is right here? The appellee that says we don't care if he paid more, Simon gets a third. The bankruptcy court, I don't care if he paid more. In fact, the bankruptcy court said he gave consideration. He gets, Simon gets a third. The district court, he says, I'm not paying attention to anything, but $56,000 is not de minimis or the suggestion that Mississippi law evens this up. And that there's no evidence that this was a real donation. There might be evidence that he wasn't going to sue his brother, but he didn't have to. He agreed to get evened up on the LLC, and that's what happened. And the unit, and both members, all members, but two members signed the written consent for the sale and for the distribution of proceeds. There was nothing Simon could do, even if he had the authority under state law to say, I want my third. Two-thirds of them said no. Now, was the court right in saying that Simon's actions precluded the trustee from doing A, B, C, and D? Absolutely not. The day after the trustee found out about this deal, the trustee, as the member, could have said to the LLC and the other members, you got too much money. Give it back. He looked at the deal and said, I don't have a right to do that. The trustee could have said that the LLC did take a state property and transfer it to somebody else. That's a transfer post-petition of a state property into 549. I get to avoid it. Guess what the trustee did? Nothing. Guess what about the notice, and the trustee was only notified? Well, the trustee was notified and said under oath in a trial where he knew what the plaintiff was saying, it was fine with me. The notice was good as far as I was concerned. And I thought it was a fair deal because the brother paid the money. That's the trustee on the ground who's saying that the notice was good. I'll tell you about the cases that talk about transfers by debtors in Chapter 7. N. Ray Wells, 426,579. Chapter 7 debtor held cashier's checks as of the petition date and used them post-petition to pay for a new pool. Well, you can get it back all right, but there's no 66.6% members holding that cashier's check that can say, you can't use the cashier's check. The next one is Mulliken, 417,389, east of Texas. Are you giving us cases that are in your brief? No, sir. This is just examples of cases by Chapter 7 debtors. There's three that involve transfer of property. None of it involves state law that would preclude the debtor even if he tried to from effectuating a transfer because he only has a one-third vote. The trustee couldn't have prevented it. He might have been able to sue afterward, but he had the authority to sue afterward. No one has claimed the membership got sold. The membership was there. The trustee had it. The trustee could have done it. The familiar presumption is about members who preexisted. This is not a gratuitous transfer to a family member. The family member was a member of the LLC from inception, and the evidence is clear. The bankruptcy court said there was consideration, and the bankruptcy court understood that five years of payments were made. This is not gratuitous. The court can decide whether it's gratuitous and family, or gratuitous or family. But here, the family is just a third member of an LLC from the inception of the LLC who the record is clear made the payments. And thank you very much. All right. Thanks to both of you for helping us understand this case. We'll take Ed on our advisement and the others for today. We are in recess until tomorrow at 9 AM.